IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNON MCMASTER,<br>Plaintiff,<br><br>v.<br><br>HEADING HEALTH INC., SIMON TANKEL, and the DIRECTORS OF THE BOARD OF HEADING HEALTH, INC.<br>Defendants. | Case No.: 2:24-cv-01321-MJH |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION CHALLENGING DEFAULT JUDGMENT**

Plaintiff opposes Defendants' Motion to Set Aside Entry of Default, for the following reasons.

I.   SUMMARY

Defendants' Motion and accompanying Brief and Declarations (ECF 33 thru 34-2), amongst other things, fail to provide a non-culpable explanation for the repeated failure in January and February 2025 to file a timely response to this lawsuit despite having both proper service and actual notice.

II.   LEGAL STANDARD

Three factors are applied and must be satisfied in favor of the Defendants to remove the default entry against them: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14 (3d Cir. 1985); *De Lage Landen Fin. Services, Inc. v. QC Labs*, 345 F.R.D. 123, 128 (E.D.Pa. 2023).

III.   ARGUMENT

A. Defendants Lack a Non-Culpable Explanation for Repeatedly Not Filing a Timely Response to the Complaint.

Defendants' presentation fails to establish a non-culpable reason for the non-filing in response to the original Complaint and late filing in response to the Amended Complaint. "Conduct is culpable when the conduct leading to entry of default was willful, intentional, reckless or in bad faith." *Sunoco, Inc. (R & M) v. Glob. Recycling & Demolition, LLC*, 300 F.R.D. 253, 257 (E.D.Pa. 2014). Culpability does not necessarily require bad faith, but it does require volitional behavior. For example, in *Stout St. Funding LLC v. Johnson*, 873 F.Supp.2d 632, 649 (E.D.Pa. 2012), the trial court declined to set aside a default judgment based in part on conclusions that the defendants had been served with the summons and complaint and has simply "elected to ignore this litigation." Defendants were clearly aware of the original Complaint, as demonstrated by the communication in December by Heading Health's CEO and co-Defendant Tankel. Even accepting *arguendo* Defendants' explanation that it had to find a new counsel in mid to late November, that does not provide a satisfactory explanation for not filing a response to the Complaint in January or February.

Plaintiff first served the Complaint by overnight delivery to Heading Health's corporate office on September 19, 2024, with a Waiver of Service; and then, when no response was received, Plaintiff served Defendants' listed corporate agent on November 26, 2024 (ECF 4 & 5).[1] There is no claim this service was defective. On the last day to timely file a response to the Complaint after this November service—i.e., after December 17, 2024—Defendant Heading Health's CEO and co-Defendant Simon Tankel left a voice-mail message and then an email for the Plaintiff's undersigned counsel stating they were having a hard time obtaining counsel. On January 9, 2025, Defendants' current counsel Don Sullivan contacted the undersigned, saying he was working on an answer, and asked for and was given an extension by which it would be filed in "a few days" (see ECF 34-2 at p. 8—Exhibit B). After a couple weeks went by without a filing, Plaintiff filed

---

[1] When the original Complaint (filed September 18, 2024) was served there were two Defendants – Heading Health, Inc. and its CEO Simon Tankel. The Amended Complaint (filed January 24, 2025) added Heading Health's Board of Directors.

an Amended Complaint on January 24, 2025 adding Heading Health's Board of Directors to the lawsuit with a count against it. Plaintiff's undersigned counsel telephoned Defendants' counsel Sullivan and informed him of this. Sullivan asked for and was emailed a copy of the Amended Complaint by the undersigned. Plaintiff, not wanting to go through the prior delays (suspecting Defendants of being dilatory) with an attempted waiver of service, served the Complaint upon Defendants' corporate agent for service and informed Mr. Sullivan of this.

Defendants' explanations do not excuse their failure to file a timely response. Defendants do not contest receipt of service of the original Complaint through their agent for service (The Corporation Trust Company)(ECF 4 & 5). Defendants' essentially argue that Plaintiff's extension in early January 2025 of "a few days" to file an answer to the original Complaint permitted them to file nothing for a couple months (see ECF 34 at p. 5). Their uncontested receipt of the original Complaint put them thereafter on notice of the need to file an answer or motion to dismiss in response to it. They were given an extension on January 9, 2025 of a few days to file it. They never filed anything in those days or even at any time later that month.

Thus, this case is the opposite of *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14 (3d Cir. 1985), which removed an entry of default and a default judgment because proper service was never made and the time period for filing an answer or motion to dismiss had not yet lapsed. It is undisputed that the service was proper and that Defendants did not file their Answer within an applicable time period.

Defendants' also claim that, while told, in late January in a telephone call between the parties' counsel, that an Amended Complaint had been filed (a copy of which, at his request, was emailed to Defendants' counsel), they maintain they were not on notice of the due date for filing a response to it (see ECF 34 at p. 5). Defendants' do not argue that this service was ineffective (as it was the same manner of effective service as with the original Complaint). Defendants and their

counsel had sufficient notice of it to, at a minimum, check the docket. A defendant cannot ignore defects in service if it has actual notice of a filing. *Wells v. Rockefeller*, 728 F.2d 209, 214 (3d Cir. 1984); *De Lage Landen Fin. Services*, 345 F.R.D. at 131-32; *Walsh v. SmithKline Beckman*, No. CIV. A. 89-5833, *1990 U.S. Dist. LEXIS 6791*, *1990 WL 76460*, at *3 (E.D. Pa. June 6, 1990)(Indeed, when "a defendant's failure to respond" is "malicious or strategic, the court will refuse to vacate the default judgment," even if service was not technically properly effectuated).

Defendants also claim that they thought Plaintiff would excuse the late filing (see ECF 34 at pp. 5-6). This is an insufficient explanation. First, it is an after-the-fact rationale which does not excuse the prior failures. Further, the statement of the undersigned, which Defendants' quote, was that Plaintiff "would consider" excusing the late filing (see ECF 34 at p. 6, ECF 34-2 at p. 13—Exhibit D). That does not amount to and there was not an agreement to waive the late filing.[2] It is not an excuse for not filing an Answer (or Motion to Dismiss) in January to the original Complaint or in February to the Amended Complaint, as it had actual notice of the lawsuit. Thus, Defendants knowingly sat on and failed to file an Answer throughout January and February, at the least.

This plainly establishes a knowing and unexcused failure to file a response in January or February. While default judgments are disfavored in a close case, precedent establishes this is not a close case. The present case is similar to others where a motion to remove an entry of default was denied because the Defendant knew of the Complaint and was in the process of preparing an answer but chose to let the time period for filing lapse without filing an answer. For example, in *Walsh v. SmithKline Beckman*, No. CIV. A. 89-5833, *1990 U.S. Dist. LEXIS 6791*, *1990 WL 76460*, at *3 (E.D. Pa. June 6, 1990), *cited with approval in De Lage Landen Fin. Services, Inc. v. QC Labs*, 345 F.R.D. 123, 132-33 (E.D.Pa. 2023), removal of a default entry was denied, even

---

[2] This is why conversations are confirmed in writing (which Plaintiff's counsel promptly did here), so as to avoid implications or misunderstandings not intended.

4

though the service was technically deficient, because the defendant was aware of and had received a complaint and had obtained outside counsel working on an answer but knowingly let the time limit pass. *See also Wells v. Rockefeller,* 728 F.2d 209 (3rd Cir. 1984)(similar holding); *Stranahan Gear Co. v. NL Indus., Inc.*, 800 F.2d 53, 56 (3d Cir. 1986)("When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process"). In the present case, Defendants do not assert that service was improper, nor do they dispute that they had actual notice of both the original and the Amended Complaint. Defendants had obtained replacement counsel in late December 2024 (see ECF 34-1, ¶9, at p. 4). Defendants' new counsel—Donald Sullivan-- contacted Plaintiff's counsel on January 9, 2025 and got an extension of time to file an Answer within "a few days" thereafter (see ECF 34-3 ¶ 3 & Exhibit B) but did not do so and did not get another extension.[3] Defendant Tankel claims he can't find in his email and regular mail a copy of the Amended Complaint (see ECF 34-1, ¶12, at p. 4). It is undisputed that Defendants' and their law firm were aware of the lawsuit and the need to file something. Further, Defendants' law firm had been informed and sent a copy of the Amended Complaint. Given that the service of the original Complaint on the corporate agent was successful and is not contested here, it is not credible and Defendants' do not argue here that the same service of the Amended Complaint was not effective. Moreover and regardless, being informed of the Amended Complaint (and sent a copy of it), at a minimum, created a duty thereafter to check the docket before assuming no response was due. As these cases refusing to vacate an entry of default show, once a party is aware of a lawsuit it cannot blithely ignore it, even if there were technical service defects. No claim of technical defects in the service is made here as Plaintiff used the same service method for the Amended Complaint that worked for the original Complaint.

---

[3] Defendants' law firm has many lawyers in many offices that could get this Answer done, with three of them from offices in San Francisco or Pittsburgh, listed as counsel of record for Defendants here.

Defendants' failure to submit a timely filing despite being on notice of the lawsuit, including the existence of an Amended Complaint, does not establish good cause to remove the default entry. The argument that post-late filing expression of willingness to consider removing that entry of default does not amount to a commitment to remove it. Defendants have no good reason for knowingly failing to act in a lawsuit of which they were well aware. *See e.g.*, *Brand v. NCC Corp.*, 540 F. Supp. 562, 564 (E.D. Pa. 1982)(having chosen to ignore the lawsuit the defendant choses also the consequences). "Default judgments will be upheld where the normal adversary process has been halted due to an unresponsive party, because diligent parties are entitled to be protected against interminable delay and uncertainty as to their legal rights." *Residential Reroofing Union Local 30-B v. Mezicco*, 55 F.R.D. 516, 518 (E.D. Pa. 1972)(internal citation omitted).

It is noteworthy here that Defendant Tankel only claims he did/does not see the Amended Complaint come through in his email or the regular mail (see ECF 34-1 at ¶¶ 11-12, at p. 4). This is not the same as saying that he was unaware of the Amended Complaint. It is also not the equivalent of saying that no one else in the organization received the Amended Complaint from their service agent and did not tell him about it. And, regardless, as stated above, Defendants were on notice of the Amended Complaint, which is sufficient. The apparent explanation here is that Defendants were trying to see whether they could get away with ignoring the lawsuit. This is consistent with the approach of the CEO of Defendant Heading Health—Simon Tankel himself also a Defendant in this lawsuit—of ignoring legal responsibilities with regard to not retaliating against employees, like Plaintiff, pursuing sexual harassment complaints which is the substantive basis of this lawsuit.

4897-5339-9663, v. 2

Thus, Defendants have failed to satisfy the good cause factor for vacating a default entry. This alone is sufficient to deny Defendants' motion, thus making it unnecessary to consider the other two factors which are nonetheless discussed below.

B. <u>The Circumstances Belie Defendants' Termination Explanation</u>.

The discharge circumstances belie Defendants' poor performance explanation. The short summary is that Plaintiff, along with two other managers, went to the Board of Directors to inform them that a second complaint of sexual harassment had been made by a female employee against CEO Tankel and that Tankel was disregarding the counseling and coaching he was given after the first complaint. The three managers who tried to address the sexual harassment complaint with the Board were Plaintiff, CFO Richard Goozh, and Human Resources Director Jeffrey Perry. It is these three people, and only these three, who were fired by Tankel on March 21, 2023, within five days of their follow-up contact to the Board (as there had been no response or action from their first contacting the board about this a few weeks earlier). That only the three persons who pursued to the Board the second sexual harassment complaint against Tankel were laid off, and within a short time period of their Board communications, lends little credence to Defendants' attempted explanation.

Additionally, at the time of her termination Plaintiff Shannon McMaster specifically asked if her discharge had anything to do with her performance (as she never received any negative feedback) and CEO Tankel responded stating it was strictly financial and had nothing to do with her performance (ECF 1 ¶¶ 20-21 at pp. 4-5; ECF 6 ¶¶ 21-22 at p. 5). Further, Respondent in January 2023 went through a reduction in force laying off a number of employees. But Plaintiff was not then laid off. If she had been such a poor performer for so long, as Tankel now claims, she would have been laid off then. Defendants had a Human Resources Director to handle the Human Resources function, so it was not forced to keep Plaintiff.

We recognize that this factor of whether Defendants have a defense to the lawsuit does not require Defendants to fully prove their defense at this stage, thus Defendants may be able to argue that having a weak defense is good enough at this stage. Minimally satisfying this one factor does not establish all three required factors.

C. <u>Plaintiff is Prejudiced by Defendants' Financial Situation</u>.

The third factor is whether there is prejudice to Plaintiff in vacating the default entry. Plaintiff is concerned, having previously heard, that Defendant Heading Health is having financial difficulties. This is why Plaintiff tried to shorten the time to a resolution of this case through early mediated settlement discussions prior to litigating the default judgment and damages. Those settlement discussions were unsuccessful. Public records demonstrate that this concern about Defendants' financial wherewithal is warranted. Defendant Heading Health, which is incorporated in Delaware, is listed in the Delaware state corporate records as being delinquent in its tax payments over the last few years in the amount of $452,636.00 (see Jaras Decl. Exhibit 1).

This is a significant sum. The fact that Defendants are delinquent to the tune of around a half-million dollars creates prejudice to Plaintiff that the more delay and time there is to a final judgment the more unable Defendants will be to satisfy a judgment. Defendants running out of money to pay its debts creates a serious prejudice to delaying the length of time before Plaintiff can proceed to enforce a judgment here.

IV.   <u>CONCLUSION</u>

Based on the above points, Defendants' Motion should be denied.

Date: October 6, 2025                              Respectfully submitted,

*/s/ Craig M. Brooks*
Craig M. Brooks
PA I.D. 33513

HOUSTON HARBAUGH, PC
Two Gateway Center
401 Liberty Ave., 22nd Floor
Pittsburgh, PA  15222
(412) 288-2214
cbrooks@hh-law.com

*Counsel for Plaintiff*

4897-5339-9663, v. 2

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2025, a true and correct copy of the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO SETTING ASIDE DEFAULT ENTRY was filed using the CM/ECF system which constitutes service upon all counsel of record and served via electronic mail upon the following:

Donald P. Sullivan, Esq.
Benjamin A. Mains, Esq.
Jackson Lewis P.C.
50 California Street, 9th Fl.
San Francisco, CA 94111
(415) 796-5453
Donald.Sullivan@jacksonlewis.com
Benjamin.Mains@jacksonlewis.com

Jessica Albert, Esq.
Jackson Lewis, P.C.
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
(412) 338-5148
Jessica.Albert@jacksonlewis.com

*Counsel for Defendants Heading Health, Inc.,*
*Simon Tankel, and the Directors of the*
*Board of Heading Health, Inc.*

/s/ Craig M. Brooks
Craig M. Brooks

4897-5339-9663, v. 2